UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Tomongo James William McCord, | ) | C/A No. 2:25-cv-11345-RMG-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **(partial summary dismissal)** |
| | ) | |
| Detective Kelly Freshman, Chief of Police | ) | |
| Gregory G. Mullen, City of Charleston, | ) | |
| Assistant Solicitor Debbie Herring-Lash, | ) | |
| Assistant Solicitor Lauren Frierson, Solicitor | ) | |
| Scarlett A. Wilson, Supervisory Officer John | ) | |
| Doe/Jane Roe, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a civil action filed by Plaintiff Tomongo James William McCord, proceeding pro se. Under 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge.

## I.    BACKGROUND

Plaintiff is an inmate at the Tyger River Correctional Institution of the South Carolina Department of Corrections (SCDC). He has named Charleston Police Department (CPD) Detective Kelly Freshman (Freshman), the City of Charleston, former CPD Chief of Police Gregory G. Mullen (Mullen), Charleston County Solicitor's Office (CCSO) Assistant Solicitor Debbie Herring-Lash (Herring-Lash), CCSO Assistant Solicitor Lauren Frierson (Frierson), CCSO Solicitor Scarlett A. Wilson (Wilson), and CPD Supervisory Officer John Doe/Jane Roe (Doe/Roe) as Defendants. ECF No. 1 at 2-4. Plaintiff brings claims under 42 U.S.C. § 1983 (§ 1983) for alleged violations of his Fourth and Fourteenth Amendment rights. *Id.* at 5.

In October 1999, Plaintiff was convicted in the Circuit Court for Charleston County of first-degree criminal sexual conduct (CSC), first-degree burglary, kidnapping, and strong-arm

robbery as to crimes that occurred in 1993. *State v. McCord*, 562 S.E.2d 689 (S.C. Ct. App. 2002). He was sentenced to terms of thirty years' imprisonment as to the CSC (1999GS1006423, indictment 1999GS10006423), burglary (F196997, indictment 1998GS1008305), and kidnapping (1999GS1006424, indictment 1999GS100006424) convictions and a term of ten years' imprisonment as to the strong-arm robbery conviction (1999GS1006422, indictment 1999GS1006422). *See* Charleston County Circuit Court Public Index, thttps://jcmsweb.charlestoncounty.gov/PublicIndex/PISearch.aspx [search case numbers listed above] (last visited Feb. 9, 2026).

Plaintiff alleges that on December 13, 2018, an arrest warrant was issued by the CPD charging Plaintiff with the offense of CSC with a minor, first degree, on August 10, 1993. Records from Charleston County indicate the case number is 2018A1010206994, indictment number 2019GS1003102. The case was dismissed on August 3, 2023, with a disposition of nolle prosequi.

Plaintiff alleges that Defendant Freshman created the arrest warrant. He claims that a Sexual Assault Kit (Kit) was obtained by CPD in August 1993, was submitted to South Carolina Law Enforcement (SLED) for DNA analysis in 2018, and a potential CODIS DNA match to Plaintiff was identified. The warrant allegedly contained this information and referred to a statement from the victim in 2018, that concerned the 1993 incident. Plaintiff claims that Freshman consulted with Assistant Solicitor Herring-Lash, and Freshman thereafter presented the proposed warrant to Judge Baldwin for issuance. ECF No. 1 at 15.

The arrest warrant was allegedly served on Plaintiff on January 23, 2019, by CPD officers Parker and Broadwater. Plaintiff was transported to the Sheriff Al Cannon Detention Center, where he was booked, processed, and assigned a public defender. A preliminary hearing was held on March 13, 2019, at which Freshman allegedly recited facts consistent with the information included in the arrest warrant and the presiding judge found probable cause for Plaintiff to be

2

charged with CSC with a minor, first degree. Thereafter, Plaintiff received the State's initial discovery disclosures. Plaintiff asserts that the information provided in the State's initial discovery disclosures were presented to the Grand Jury in June 2019, and a true bill indictment was returned. ECF No. 1 at 16-17.

Plaintiff claims that the initial discovery disclosures included a supplemental report created by Freshman on January 13, 2018. She allegedly noted the file could not be located and a search of the warehouse did not yield any results. Freshman allegedly stated she opened the Kit to attempt to locate a Sexual Assault Nurse Examination (SANE) report, the SANE report was located inside the Kit, she resealed the Kit, and she checked the Kit back into evidence. Plaintiff asserts the supplemental report indicated that Freshman "checked evidence and was able to locate the evidence voucher submitted at the time of the original report. The voucher indicates the only item of evidence is the SANE [report]." ECF No. 1 at 18.

Plaintiff claims the SANE report indicated the victim's clothing was collected and included among the contents of the Kit by the nurse who conducted the examination in August 1993. He states he received a copy of the Forensics Services Laboratory Report (Report) dated October 24, 2018. Plaintiff alleges that the Report listed that swabs and suspected semen gauze were received for analysis, but the Report supposedly did not indicate that the victim's clothing was part of the Kit submitted for testing. ECF No. 1 at 19-20.

Plaintiff contends that the clothing evidence might have contained important evidentiary value to determine the accused's guilt or innocence. He claims that CPD and its officers did not make the clothing evidence and the case investigative file available to him for inspection or testing. He alleges there were no police reports from 1993, and there was no information presented to indicate what investigation (if any) was done after the initial report in August 1993. Plaintiff claims that the detective testified at the preliminary hearing that he/she did not believe there were any

recordings of any interviews from 1993. He contends that the CPD, Freshman, and all supervisory officers personally involved in the case acted in a concerted effort to deny Plaintiff the benefit of missing evidence because they forwarded a misleading and deficient discovery response, omitted any mention of their possession of clothing evidence, and did not mention any problems regarding the alleged failure to retain records of interviews with witnesses. Plaintiff appears to assert that potential exculpatory evidence was not produced. ECF No. 1 at 19-22.

Plaintiff also appears to claim that, because there allegedly were problems as to the 2018 charge, there were also problems as to the 1993 arrests on which he was convicted. He asserts this shows a "continuous course of conduct." ECF No. 1 at 24.

Plaintiff asserts he sues "Herring-Lash for her personal involvement that has manifested itself in the form of decisions that she may have assisted in making for the primary individuals who were on the frontline of presenting and forwarding this case through the channels it has proceeded to get where it has resulted in a complete violation of the Plaintiff's rights." He claims Frierson "was personally involved in continuing to prosecute this case when she should have known of the pervasive police M misconduct connected with this case that were revealed at the State's preliminary hearing." Plaintiff alleges that Frierson "attempted to negotiate a plea with the Plaintiff in spite of the issue of missing evidence had B not been addressed by the State." ECF No. 1 at 27-28 (errors in original).

## II.     STANDARD OF REVIEW

Under established local procedure in this judicial district, a careful review has been made of the pro se Amended Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915A, the Prison Litigation Reform Act (PLRA), Pub. L. No. 104–134, 110 Stat. 1321 (1996), and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992), *Neitzke v. Williams*, 490 U.S. 319 (1989), *Haines v. Kerner*, 404 U.S. 519 (1972), and *Todd v. Baskerville*, 712 F.2d 70 (4th

4

Cir. 1983). *Pro se* petitions are held to a less stringent standard than those drafted by attorneys, and a court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). The requirement of liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

### III.     DISCUSSION

For the reasons discussed below, it is recommended that Defendants Mullen, City of Charleston, Herring-Lash, Frierson, Wilson, and Doe/Roe be summarily dismissed as Defendants to this action. Additionally, it is recommended that any claims Plaintiff is asserting concerning his 1999 convictions on the other charges from 1993 (first-degree CSC, first-degree burglary, strong-arm robbery, and kidnapping) be dismissed.

A.     Failure to State a Claim – Defendants Mullen, Wilson, and Doe/Roe

Although Plaintiff lists the names of Defendants Mullen, Wilson, and Doe/Roe in the caption of his Complaint, his pleadings fail to provide any specific facts to support any claim that these Defendants violated his federal constitutional or statutory rights. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring, to avoid dismissal, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests'" (quoting Fed. R. Civ. P. 8(a)(2))). Plaintiff has alleged no facts as to what Mullen, Wilson, and Doe/Roe did that violated his federal constitutional or statutory rights. Although the "liberal pleading requirements" of Rule 8(a) only require a "short and plain" statement of the claim, a plaintiff must "offer more detail ... than the

5

bald statement that he has a valid claim of some type against the defendant." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (internal citations omitted); *see also White v. White*, 886 F.2d 721, 723 (4th Cir. 1989) (district court did not abuse discretion by dismissing plaintiff's complaint which "failed to contain any factual allegations tending to support his bare assertion").[1]

Additionally, to the extent Plaintiff may be attempting to bring a claim against Defendants Mullen, Wilson, and Doe/Roe based on a theory of supervisory liability, such claims are subject to summary dismissal. To state a § 1983 claim for supervisory liability, a plaintiff must allege:

> (1) that the supervisor had actual or constructive knowledge that [his or her] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Here, Plaintiff has not alleged any facts to establish a § 1983 claim for supervisory liability as to Defendants Mullen, Wilson, and Doe/Roe.

B.     Claims as to Criminal Convictions and Sentences

To the extent Plaintiff is attempting to allege claims for monetary damages as to his criminal convictions and the sentences he is serving, those claims should be dismissed. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court held that a state prisoner's claim for damages is not cognizable under § 1983 where success of the action would implicitly question

---

[1]To state a claim for malicious prosecution under § 1983, Plaintiff must allege that: (1) the defendant seized him pursuant to legal process (e.g., a warrant) not supported by probable cause and (2) the criminal proceedings have terminated in his favor. *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017); *see Thompson v. Clark*, 596 U.S. 36, 39 (2022) (explaining the favorable termination element requires a plaintiff to "show that the criminal prosecution ended without a conviction").

the validity of the conviction or duration of the sentence, unless the prisoner can demonstrate that the conviction or sentence has been previously invalidated. *Heck*, 512 U.S. at 486-487.

Plaintiff's claims for monetary damages are barred by the holding in *Heck*. He appears to be attempting to allege there has been a continuous course of conduct as to another criminal investigation of assault arising from 1993 for which he was convicted by jury trial in 1999. ECF No. 1 at 24. Plaintiff appears to allege that the state sentences he is currently serving are unconstitutional. However, Plaintiff does not allege that his convictions and sentences have been invalidated, for example, by a reversal on direct appeal or a state or federal court's issuance of a writ of habeas corpus. A favorable determination on the merits of Plaintiff's § 1983 claims would imply that Plaintiff's criminal convictions and sentences, which he is currently serving, are invalid. Thus, any claims pertaining to Plaintiffs prior convictions and sentences should be dismissed because a right of action has not accrued.

Moreover, to the extent Plaintiff seeks to have his criminal convictions and sentences dismissed in this § 1983 action, his claims should be summarily dismissed. In effect, any such claims are a request to be released from detention as to the sentences he is serving, which is not an available remedy in a § 1983 civil rights action. *See Heck v. Humphrey*, 512 U.S. at 481 (stating that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983"); *Preiser v. Rodriguez*, 411 U.S. 475, 487–88 (1973) (attacking the length or duration of confinement is within the core of habeas corpus).

C.     Prosecutorial Immunity – Defendant Frierson, Herring-Lash, and Wilson

Defendants Frierson, Herring-Lash, and Wilson are subject to summary dismissal because they are entitled to prosecutorial immunity. Prosecutors have absolute immunity from damages for activities performed as "an officer of the court" where the conduct at issue was closely associated

with the judicial phase of the criminal process. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 341-343 (2009). For example, when a prosecutor "prepares to initiate a judicial proceeding," "appears in court to present evidence in support of a search warrant application," or conducts a criminal trial, bond hearings, grand jury proceedings, and pre-trial "motions" hearings, absolute immunity applies. *Id.* at 343; *see also Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Dababnah v. Keller-Burnside*, 208 F.3d 467 (4th Cir. 2000). Therefore, because Plaintiff is attempting to assert claims against Defendants Herring-Lash and Frierson based on their participation in Plaintiff's criminal proceedings, and against Wilson based on her alleged supervision of Frierson and Herring-Lash as to his criminal proceedings, his claims against these Defendants are barred. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (absolute immunity "is an immunity from suit rather than a mere defense to liability"); *see also Savage v. Maryland*, 896 F.3d 260, 268 (4th Cir. 2018) ("In *Imbler v. Pachtman*, 424 U.S. 409, 430-32 [ ] (1976), the Supreme Court held that prosecutors are absolutely immune from damages liability when they act as advocates for the State.").

D.    Municipal Liability

Plaintiff contends that the City of Charleston is liable under a theory of municipal liability. In the facts section of the Complaint, there are no specific facts as to the City of Charleston. In his second cause of action (municipal liability), Plaintiff alleges:

> [T]he City of Charleston, by and through its Mayor, City Council, and the Charleston Police Department, had, during the times relevant to this Complaint and for many years preceding that period, a policy, custom of unconstitutional misconduct in the investigation criminal offenses.
>
> []This policy, practice or custom included misclassifying, closing and/or miscoding potential sexual assault reports, and failing to adequately investigate reported sexual assaults, an violating the rights of suspects accused of sexual assault crimes.
>
> [T]he City of Charleston was aware of this custom, but failed to take remedial action, instead allowing the custom to continue for many years.

ECF No. 1 at 28-29 (errors in original).

8

Under § 1983, municipal liability is limited to actions for which the municipality is "actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Municipal liability under § 1983 applies to local government entities, including local government officials sued in their official capacities, only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978); *see also Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (noting that claims against public officials in their official capacities are claims against the government entity that employs the official). A local government entity is not liable under § 1983 "solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691. A policy or custom for which municipal liability can arise may be established in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifests deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Starbuck v. Williamsburg James City Cnty. Sch. Bd.,* 28 F.4th 529, 533 (4th Cir. 2022) (internal brackets omitted) (quoting *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)). "Sporadic or isolated violations of rights will not give rise to *Monell* liability; only widespread or flagrant violations will." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 403 (4th Cir. 2014) (internal quotation omitted). Here, Plaintiff fails to allege any facts as to identify what official policy, decision of a person with final policymaking authority, failure to properly train officers that manifests deliberate indifference to the rights or citizens, or practice so persistent and widespread as to constitute a custom or usage with the force of law is the basis of his contention that the City of Charleston is liable. He only points to what he perceives as a constitutional violation in the alleged malicious

prosecution of the 2018 charge. Thus, Plaintiff fails to state a claim upon which relief can be granted against the City of Charleston.

## IV.    RECOMMENDATION

Based on the foregoing, it is recommended that the Court summarily dismiss Defendants Mullen, the City of Charleston, Herring-Lash, Frierson, Wilson, and Doe/Roe as parties to this action. It is also recommended that any claims as to Plaintiff's 1999 convictions be dismissed. The Complaint should be served on Defendant Freshman.[2]

**Plaintiff's attention is also directed to the important notice on the next page.**

_____
Molly H. Cherry
United States Magistrate Judge

February 12, 2026
Charleston, South Carolina

---

[2] If this Report and Recommendation is adopted, the only claim that will remain is the malicious prosecution claim against Defendant Freshman as to the 2018 first-degree CSC with a minor charge.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk<br>
United States District Court<br>
Post Office Box 835<br>
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

11